UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| KENNETH HERRINGTON | : | |
| Debtor | : | Bankruptcy No. 06-14433bif |

| | | |
|---|---|---|
| KENNETH HERRINGTON | : | |
| Plaintiff | : | |
| v. | : | |
| WELLS FARGO BANK, MINNESOTA, N.A., DELTA FUNDING CORPORATION and COUNTRYWIDE HOME LOANS | : : | |
| | : | Adversary No. 07-0009 |
| Defendants | : | |

..................................................

MEMORANDUM

..................................................

Presently before me are the motions of defendants Delta Funding

Corporation and Wells Fargo Bank, Minnesota, N.A. to compel arbitration as to two

counts of the plaintiff's amended complaint,[1] Count II, styled "HOEPA Recoupment,"

and Count III, styled "UDAP."

"A motion to compel arbitration calls for a two-step inquiry into (1)

whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls

within the scope of that agreement."  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d

---

[1]On April 3, 2007, defendant Countrywide was dismissed from this proceeding by
agreement.

529, 532 (3d Cir. 2005).  As will be discussed below, the plaintiff opposes defendant's

motion by arguing that no valid arbitration agreement exists (as it is unconscionable) and

that both counts in this proceeding are non-arbitrable within the express terms of the

agreement.  He also asserts that this court should exercise its discretionary authority not to

enforce the arbitration agreement.

For the following reasons, the defendants' motions will be granted in large

part.

I.

On September 30, 2006, the plaintiff filed a voluntary petition in

bankruptcy under chapter 13.  Wells Fargo then filed a secured proof of claim in the

amount of $44,100.97 dated December 14, 2006.  This claim is purportedly secured by

real estate located at 1928 West Somerset Street, Philadelphia, Pennsylvania.

On January 12, 2007, the debtor commenced the above-captioned adversary

proceeding.  In an amended complaint, the debtor raises claims arising from a loan

transaction of July 24, 2000, wherein he borrowed $19,800 from defendant Delta, secured

by a mortgage on his residence.  Wells Fargo is alleged to be Delta's assignee and current

holder of the note and mortgage.

In Count I of the amended complaint, the debtor contends that the value of

the realty serving as collateral for Wells Fargo's secured claim does not exceed $22,000.

Amended Complaint, ¶ 18.  The debtor further asserts that Delta assigned to Wells Fargo

a security interest in his residence as well as certain of the debtor's personal property, id.,

2

¶ 21, the latter of which deprives the creditor of the "anti-modification" protections of section 1322(b)(2).  Id., ¶ 22.  Accordingly, the debtor in Count I seeks to bifurcate Wells Fargo's claim into secured and unsecured components by virtue of section 506(a), in which the secured component does not exceed $22,000.  Id., ¶ 23.

In Count II of the amended complaint, the debtor asserts that Delta was required to provide "the Plaintiff with the specific HOEPA disclosures ('Section 32 Disclosures') at least three business days in advance of the July 24, 2000 loan closing, as required by 15 U.S.C. § 1639(a)(1); 12 C.F.R. § 226.32( c )(1)," Amended Complaint, ¶ 42, and that Wells Fargo is liable for this failure by virtue of 15 U.S.C. § 1641(d)(1).  Id., ¶ 44.  The debtor requests "recoupment of statutory damages . . . to be offset against the total amount of the allowed secured claim of Wells Fargo . . . ," id., "Wherefore clause," ¶ c, plus reasonable attorney's fees and costs under 15 U.S.C. § 1640(a)(3).  Id., ¶ d.

In Count III of the amended complaint, the debtor avers that "Not providing Mr. Herrington with the statutorily required HOEPA notice is unfair and deceptive conduct under 73 P.S. § 201-2(xxi) of the Pennsylvania Unfair Trade Practices Act ('UDAP')."  Id., ¶ 50.  The debtor was purportedly damaged by the "amount of fees and costs he paid as a result of entering into this loan transaction."  Id., ¶ 53.  He seeks "recoupment of three times of his actual damages."  Id., "Wherefore clause," ¶ e.

The July 2000 loan agreement contained an Arbitration Agreement signed by the debtor.  This agreement, a true and correct copy of which is attached to Delta's motion to compel arbitration as Exhibit A, contains the following definitions:

3

"We or "US"" means Delta Funding Corporation . . . its . . . successors and assigns. . . .[2]

"Credit Transaction" means the loan obligation identified by the above-referenced Loan Number and any prior loan obligation which was originated, owned and/or serviced by us. . . .

"Claim" means any claim, dispute or controversy between you and us (except for Excluded Claims, defined below) arising from or relating to the Credit Transaction . . . including the validity, enforceability or scope of this Agreement. . . .  The term "Claim" is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim . . . that arises under or relates to the Truth in Lending Act, the Home Owners and Equity Protection Act and Regulation Z . . .  state insurance, usury and lending laws . . . other federal or state consumer protection statutes or regulations. . . .

"Excluded Claims" means (a) any action to effect a judicial or non-judicial foreclosure or to establish a deficiency judgment . . .  (d) any action to assert, collect, protect, realize upon or obtain possession of the collateral for the Credit Transaction in any bankruptcy proceeding . . . .

Delta's Motion to Compel Arbitration, Ex. A.

This arbitration agreement further defines non-arbitrable claims:

Notwithstanding the foregoing or any other term in this Agreement, Excluded Claims, as defined above, are excluded from arbitration. This means that neither you nor us can require the other to arbitrate any Excluded Claims. Participating in a lawsuit or seeking judicial relief with respect to any Excluded Claims shall not waive a party's right to arbitrate any Claims.  For example, if we were to commence a foreclosure action against you in court, that action and any defenses asserted by you in that action would be adjudicated in court; however, if you asserted a counterclaim against us in that action which was covered by

---

[2]Consistent with the applicability to assigns, a section of the arbitration agreement styled <u>Survival, Severability and Primacy</u> states that the agreement survives the sale or transfer of the loan documents.

> the scope of this Agreement, we would have the right to
> demand that the counterclaim be arbitrated (you would also
> have the right to arbitrate the counterclaim rather than
> asserting it in court).

Id.  In addition, the Arbitration Agreement specifically stated that it was to be governed

by the Federal Arbitration Act ("FAA").  Id.

        The arbitration agreement also contained the following provision

concerning costs and fees:

> Hearing Location and Arbitration Costs.  Any arbitration
> hearing that you attend shall take place in the federal judicial
> district of your residence.  At your written request, we will
> consider in good faith making a temporary advance of all or
> part of the filing, administrative and/or hearing fees in
> connection with any Claim you initiate as to which you or we
> seek arbitration.  At the conclusion of the arbitration, the
> arbitrator will decide who will ultimately be responsible for
> paying the filing, administrative and/or hearing fees in
> connection with the arbitration.  Unless inconsistent with
> applicable law, each party shall bear the expense of that party's
> attorneys', experts' and witness fees, regardless of which party
> prevails in the arbitration.

        Finally, the arbitration agreement included a severability clause:

> If any portion of this Agreement is deemed invalid or
> unenforceable under any law or statute consistent with the
> FAA, it shall not invalidate the remaining portions of this
> Agreement or the Credit Transaction, each of which shall be
> enforceable regardless of such invalidity.

Id.

        Based upon the above-quoted definition of an arbitrable claim, both Delta

(as the original lender) and Wells Fargo (as the assignee) contend that the plaintiff's

HOEPA and UDAP claims against them are expressly made arbitrable.  Thus, these

defendants seek to stay the resolution of Counts II and III in this adversary proceeding and

to compel their determination via arbitration.  See generally In re Brown, 311 B.R. 702

5

(Bankr. E.D. Pa. 2004). They do not seek to compel arbitration of Count I, the bifurcation claim.[3]

The plaintiff raises three grounds for denying the motion to compel arbitration. First, he contends that the arbitration clause is both procedurally and substantively unconscionable. Second, he argues that this proceeding is a response to the secured proof of claim filed by Wells Fargo and thus is a claim excluded from the scope of the parties' arbitration agreement. And third, the plaintiff maintains that this bankruptcy court has the discretion to deny enforcement of the arbitration agreement and should exercise its discretion to do so.

------------------------------------------------------------

[3]The defendants did not contend that the arbitration agreement covered Count I ("Lien Stripdown"), which claim is based solely upon the provisions of sections 506 and 1322 of the Bankruptcy Code. Thus, their request to stay this proceeding pending arbitration does not include Count I. Given defendants' position, I issued a prior order severing Count I and scheduling a trial on that claim, as the facts and issues involved in the "Lien Stripdown" count are different from those in the other two counts. My courtroom deputy has been informed recently that Count I has been settled in this bankruptcy case. Presumably, the parties to such an agreement—as it involves bifurcation of a secured claim asserted by Wells Fargo—would only be the debtor and Wells Fargo. Indeed, it is unclear to me that the debtor seeks any relief from defendant Delta as to Counts II and III, as his amended complaint seeks "recoupment" relief and Delta has not asserted any claim in this bankruptcy case. That issue though is not before me, as Delta probably believes it must be raised before an arbitrator.

Also not before me at present, and perhaps also intended by the defendants to be raised before an arbitrator, is the interplay between the bifurcation relief sought in Count I and the recoupment relief sought in Counts II and III. Indeed, given the terms of the debtor's proposed chapter 13 plan (which has not been confirmed) and given the parties' resolution of Count I (the terms of which are not of record), the coordination of relief among the three counts could render the outcome of the two recoupment claims of little or no significance either to the debtor or to the defendants, beyond the issue of attorney's fees.

6

II.

At the outset, I find unpersuasive the plaintiff's argument that I have the discretion not to enforce a valid arbitration agreement and stay any resolution of Counts II and III, which counts assert claims arising from federal and state consumer protection statutes.

"The FAA provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. A court has the power to stay a proceeding if it determines that an issue falls under an applicable arbitration clause. 9 U.S.C. § 3. If one of the parties fails to comply with such an agreement, a court may order 'the parties to proceed to arbitration in accordance with the terms of the agreement.' 9 U.S.C. § 4." In re Mintze, 434 F.3d 222, 229 (3d Cir. 2006). Thus, in general, "[t]he FAA makes agreements to arbitrate enforceable to the same extent as other contracts." Harris v. Green Tree Financial Corp., 183 F.3d 173, 178 (3d Cir. 1999). Indeed, "federal law presumptively favors the enforcement of arbitration agreements." Id., at 178.

The duty to enforce arbitration agreements by bankruptcy courts in this circuit has evolved along with the contours of their subject matter jurisdiction.

After the Supreme Court rendered its decision in Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982), but before Congress responded with legislation, viz. 28 U.S.C. §§ 157, 1334, giving rise to the current core/non-core components of bankruptcy court jurisdiction, the Third Circuit expressed concern in Zimmerman v. Continental Airlines, 712 F.2d 55, 59-60 (3d Cir. 1983), cert.

7

denied, 464 U.S. 1038 (1984), that enforcement of a prepetition arbitration provision could

undermine congressional intent found in the Bankruptcy Reform Act of 1978 to have all

issues involving the debtor resolved in one bankruptcy court forum:

> The dictates of the Arbitration Act, requiring stays of
> proceedings pending arbitration, could result in delays,
> expenses, and duplications similar to those previously
> experienced in bankruptcy proceedings because of the
> dichotomy between plenary and summary jurisdiction.  Clearly
> a mandatory stay of a bankruptcy proceeding delays that
> proceeding.  Also, since issues relating to the relationship
> between debtor and creditor might well be the subject of both
> the bankruptcy and the arbitration proceedings, duplication of
> adversarial effort, with a resulting increase in expense, would
> likely occur.  Therefore, the policies underlying the expansion
> of bankruptcy court jurisdiction embodied in the Bankruptcy
> Reform Act [of 1978] may be relied on to resolve the conflict
> in the instant case.

Id., at 58-59.

Thus, the Third Circuit concluded in Zimmerman that enforcement of

arbitration agreements in bankruptcy cases was discretionary.  Id., at 59-60 ("[W]hile a

bankruptcy court would have the power to stay proceedings pending arbitration, the use of

this power is left to the sound discretion of the bankruptcy court.").  See also former 28

U.S.C. § 1471(d).  A bankruptcy court could decide whether enforcement of an arbitration

agreement would adversely affect the administration of the bankruptcy case.

After passage of 28 U.S.C. § 157(c), directing that bankruptcy courts could

only issue recommendations in non-core matters unless all parties agreed to the entry of a

final judgment, the congressional policy identified in Zimmerman—that the prompt

administration of a bankruptcy case by having one forum adjudicate all issues involving

the debtor was paramount—was no longer considered valid, at least as to non-core

proceedings.  See Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d

8

1149, 1159-60 (3d Cir. 1989). To the extent that <u>Hays</u> could be construed as suggesting

that <u>Zimmerman</u> retained some vitality, with bankruptcy courts having discretion not to

enforce a valid arbitration agreement in core matters, <u>see</u> <u>generally</u> <u>In re FRG</u>, 115 B.R.

72, 73 (E.D. Pa. 1990), the Third Circuit recently instructed otherwise in <u>In re Mintze</u>.

In <u>Mintze</u>, the Circuit Court of Appeals held that "[t]he core/non-core

distinction does not, however, affect whether a bankruptcy court has the discretion to deny

enforcement of an arbitration agreement." <u>In re Mintze</u>, 434 F.3d at 229. Instead, a

bankruptcy court has no discretion not to enforce an arbitration agreement unless Congress

intended otherwise. The Circuit Court explained:

> The FAA's mandate can, however, be overridden. If a party
> opposing arbitration can demonstrate that "Congress intended
> to preclude a waiver of judicial remedies for the statutory
> rights at issue," the FAA will not compel courts to enforce an
> otherwise applicable arbitration agreement. <u>McMahon</u>, 482
> U.S. at 227. . . . To overcome enforcement of arbitration, a
> party must establish congressional intent to create an exception
> to the FAA's mandate with respect to the party's statutory
> claims. Congressional intent can be discerned in one of three
> ways: (1) the statute's text, (2) the statute's legislative history,
> or (3) "an inherent conflict between arbitration and the
> statute's underlying purposes." <u>McMahon</u>, 482 U.S. at 227[.]

<u>Id.</u>, at 229; <u>see</u> <u>In re Olympus Healthcare Group, Inc.</u>, 352 B.R. 603, 601 (Bankr. D. Del.

2006); <u>see</u> <u>also</u> <u>Green Tree Financial Corp.-Alabama v. Randolph</u>, 531 U.S. 79, 90 (2000)

("In determining whether statutory claims may be arbitrated, we first ask whether the

parties agreed to submit their claims to arbitration, and then ask whether Congress has

evinced an intention to preclude a waiver of judicial remedies for the statutory rights at

issue.").

The Court of Appeals found no evidence in either the text or legislative

history of the Bankruptcy Code evincing a congressional intent to preclude arbitration of

9

disputes arising in bankruptcy cases.  In re Mintze, 434 F.3d at 231.  Nor did the Third

Circuit find any "inherent conflict":

> The Bankruptcy Court concluded that the ultimate decision on
> Mintze's rescission claim will have an effect on the rights of
> the other creditors to Mintze's estate.  Determining that the
> potential effect on the order of priority and the amount of
> distribution to Mintze's other creditors was sufficient to create
> an inherent conflict between the Bankruptcy Code's underlying
> purposes and arbitration, the Bankruptcy Court concluded that
> the proceeding was best left in the Bankruptcy Court. The
> District Court affirmed the Bankruptcy Court, stating that its
> decision was "within the appropriate bounds of discretion. . . ."
>
> We cannot agree with this conclusion.  First, to override the
> FAA's mandate for enforcement of arbitration, the McMahon
> standard requires congressional intent "to preclude a waiver of
> judicial remedies for the *statutory rights* at issue."  McMahon,
> 482 U.S. at 227, 107 S.Ct. 2332 (emphasis added).  The
> statutory claims that Mintze has raised are based on TILA and
> several federal and state consumer protection laws.  Mintze has
> failed to raise any statutory claims that were created by the
> Bankruptcy Code.  With no bankruptcy issue to be decided by
> the Bankruptcy Court, we cannot find an inherent conflict
> between arbitration of Mintze's federal and state consumer
> protection issues and the underlying purposes of the
> Bankruptcy Code.

Id., 434 F.3d at 231-32 (footnote omitted).[4]

Furthermore, implicit in Mintze is the conclusion that claims arising from

alleged violations of federal or state consumer protection statutes were not intended by

Congress to be outside the scope of the FAA.  Id., at 231-32; see In re Cooley, 362 B.R.

514, 518 (Bankr. N.D. Ala. 2007) ("[I]n consumer finance transactions where the parties

have entered into arbitration agreements, TILA claims should be resolved through

---

[4]As the plaintiff notes, the court in Mintze did suggest that substantive bankruptcy
law provisions may not be within the scope of the FAA.  Id., at 231-32.  Here, both Delta and
Wells Fargo have not sought to arbitrate Count I of this adversary proceeding, involving a claim
under 11 U.S.C. §§ 506 and 1322.

arbitration.").  Congress expressed no intent to preclude arbitration of such claims, if the parties so agreed.

Therefore, I have no discretionary power to decline to enforce the arbitration agreement in this proceeding, to the extent it is a valid prepetition agreement.


III.


The plaintiff strenuously argues that the arbitration agreement at issue here is invalid because it is unconscionable under Pennsylvania law.  (The parties do not dispute that as the loan and arbitration agreements were signed in Pennsylvania, Pennsylvania law governs.  See generally Harris v. Green Tree Financial Corp., 183 F.3d 173 (3d Cir. 1999).)  As the plaintiff does not argue that the loan agreement itself was unconscionable, but only challenges the arbitration provisions, I have the power to determine that challenge.  See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S. Ct. 1204, 1210 (2006) ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

Recently, the Pennsylvania Supreme Court explained the components of its common law doctrine of unconscionability:

> The doctrine of unconscionability has been applied in
> Pennsylvania as both a statutory and a common-law defense to
> the enforcement of an allegedly unfair contract or contractual
> provision. . . .  This Court, however, has not frequently
> discussed the common-law application.  Nevertheless, we
> agree with the general formulation which has been applied
> fairly consistently in the intermediate appellate courts, and
> which borrows from the statutory version and is largely

11

consonant with the Second Restatement of Contracts.  See
Restatement (Second) of Contracts § 208 (1981).

> Under that formulation, a contract or term is unconscionable,
> and therefore avoidable, where there was a lack of meaningful
> choice in the acceptance of the challenged provision and the
> provision unreasonably favors the party asserting it. . . .  The
> aspects entailing lack of meaningful choice and
> unreasonableness have been termed procedural and substantive
> unconscionability, respectively. . . .  The burden of proof
> generally concerning both elements has been allocated to the
> party challenging the agreement, and the ultimate
> determination of unconscionability is for the courts.

Salley v. Option One Mortgage Corp., 925 A.2d 115, 119-120 (Pa. 2007) (citations and

footnote omitted).

The plaintiff in this proceeding maintains that the particular arbitration

agreement was mandated by the original lender, Delta, and that both procedural and

substantive elements of unconscionability are present.  As to both substantive and

procedural unconscionability, he complains that the lender is free to prosecute its claims in

court, while the borrower's claim must be resolved by arbitration.  He argues:

> Although the definitions of "claims" and "excluded claims"
> appear on their face to apply equally to both parties, in reality
> the underlying benefits of the "excluded claims" clause inures
> wholly to Delta.  As a practical matter, Mr. Herrington cannot,
> for example, file a foreclosure action against Delta; or seek a
> deficiency judgment against them [sic], or obtain a deed in
> lieu. Thus, in reality, the "excluded claims" clause acts to
> preserve Delta's access to the courts, while essentially
> precluding the borrower's judicial access – thus, the "excluded
> claims" provision is, in fact, a "reservation of judicial access"
> clause which overwhelming favors Delta.

> Furthermore, the Agreement also provides that even if Delta
> initiates judicial action on an "excluded claim" (for example,
> filing a foreclosure or filing a proof of claim in a bankruptcy),
> Delta's choice to use the courts does not waive Delta's right to
> nevertheless force arbitration of any counterclaims filed in
> response by the borrower.

12

*** 

In effect, this provision is an "anti-waiver" clause: a one-sided attempt to avoid any argument that Delta has waived any right to arbitrate a borrower's claims even after Delta chooses the courts over arbitration.

If these three separate sections are parsed carefully and read together, they effectively (1) mandate arbitration of all "claims," but (2) reserve to Delta alone the choice of whether or not to pursue "excluded claims" in arbitration or in court; and (3) nevertheless allow Delta to compel arbitration if the borrower raises counterclaims in response to judicial action initiated by Delta. See supra. It is clear that, taken together, the "reservation of judicial access" and "anti-waiver" clauses overwhelmingly favor Delta by allowing only Delta the ability to choose whichever forum it thinks is most favorable, and also allowing Delta the right to 'change its mind' and compel arbitration even after Delta selects the judicial forum. It would be counterintuitive to believe that Mr. Herrington would accept such overwhelmingly one-sided access to the courts in favor of Delta if he was actually aware of these terms or if another choice existed.

*** 

Herrington contends that the Agreement is also substantively unconscionable because the "reservation of judicial access" clause, together with the "anti-waiver" provision, effectively reserves access to the courts for Delta only. These two clauses are clearly so unreasonably onesided that they "unreasonably favor" Delta and should not be enforced.

Plaintiff's Responsive Memorandum to Delta Funding's Motion, at 7-8, 10.

In responding to Well Fargo's motion to compel arbitration, the plaintiff

added another reason that the arbitration agreement was unconscionable:

Even if the Court were to find that the "reservation of access" and "anti-waiver" provisions were not unconscionable per se, the Agreement still should not be enforced since it imposes unconscionable costs on Mr. Herrington. Despite the liberal policy favoring arbitrations, the Supreme Court has made it clear that arbitration is only an appropriate alternative forum "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum," Gilmer, 500 U.S. at 28, and has acknowledged that the existence of large arbitration costs could preclude a litigant . . .

13

> from effectively vindicating her federal statutory rights in the
> arbitral forum." <u>Green Tree Financial Corp. v. Randolph</u>, 531
> U.S. 79, 90 (2000).

Plaintiff's Responsive Memorandum to Well Fargo's Motion, at 20-21.

I shall consider both contentions of unconscionability separately.

A.

Plaintiff's primary position—that an arbitration agreement which exempts from binding arbitration certain creditor remedies while requiring the submission of borrower claims to arbitration is unconscionable under Pennsylvania law—was supported by the Pennsylvania Superior Court decision in <u>Lytle v. CitiFinancial Services, Inc.</u>, 810 A.2d 643 (Pa. Super. 2002).  The Pennsylvania Supreme Court in <u>Salley v. Option One Mortgage Corp.</u>, however, recently overruled <u>Lytle</u> on that point.  Agreeing with the New Jersey Supreme Court's decision in <u>Delta Funding Corp. v. Harris</u>, 189 N.J. 28, 912 A.2d 104 (2006), the <u>Salley</u> court noted some justification for the split-forum provisions of consumer loan arbitration agreements: The foreclosure process, culminating in a sheriff sale of realty, is inherently judicial; and fee-shifting agreements in consumer protection statutes ameliorate the expense to borrowers who successfully undertake the arbitration process.

> [T]here is a facially apparent business justification for such an
> exception, as the safeguards thereby preserved assure
> regularity and consistency for the benefit of both lender and
> borrower, and accordingly, there are sound pragmatic and
> policy reasons why foreclosure proceedings should be pursued
> in a court of law.  While there is no question that the
> reservation facilitates the split-forum effect highlighted by Mr.
> Salley's <u>amici</u>, again, the federal and state consumer protection

14

laws invoked by Mr. Salley mitigate this burden for
meritorious claims properly brought under their provisions.
See, e.g., 15 U.S.C. § 1640(a)(3); 73 P.S. § 201-9.2.
Moreover, the United States Supreme Court has made clear
that parties who agree to arbitrate some claims may exclude
others from the scope of the arbitration agreement.  See Dean
Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 . . . (1985)
("The preeminent concern of Congress in passing the [Federal
Arbitration] Act was to enforce private agreements into which
parties had entered, and that concern requires that we enforce
agreements to arbitrate, even if the result is 'piecemeal'
litigation[.]"); Mitsubishi Motors Corp. v. Soler
Chrysler-Plymouth, Inc., 473 U.S. 614, 628 . . . (1985)
("Nothing, in the meantime, prevents a party from excluding
statutory claims from the scope of an agreement to arbitrate.").
As such, the split-forum effect can be viewed as an acceptable
corollary to the general policy favoring arbitration of claims.

Salley v. Option One Mortgage Corp., 925 A.2d at 128.

As a result, the Pennsylvania Supreme Court concluded:

While we believe that Lytle was well intentioned in its effort to
guard against pernicious lending practices, our conclusion here
is that it swept too broadly.  Under Pennsylvania law, the
burden of establishing unconscionability lies with the party
seeking to invalidate a contract, including an arbitration
agreement, and there is no presumption of unconscionability
associated with an arbitration agreement merely on the basis
that the agreement reserves judicial remedies associated with
foreclosure.

                                    ***

We conclude that the exception from mandatory arbitration for
foreclosure contained within the Option-One/Salley arbitration
agreement, in and of itself, does not render the agreement
presumptively unconscionable under Pennsylvania law.

Salley v. Option One Mortgage Corp., 925 A.2d at 129.

This holding is consistent with the prediction of Pennsylvania law made by

the Third Circuit in Harris v. Green Tree Financial Corporation, 183 F.3d at 183.

Accordingly, the lack of mutuality of forum found in the arbitration agreement does not

render the agreement so unfair as to be unenforceable.  See id., at 180-81; Anderson v.

Delta Funding Corp., 316 F. Supp. 2d 554, 566-67 (N.D. Ohio 2004).


B.


The debtor's complaint in this proceeding about the potential cost to him of

asserting his consumer protection claims via arbitration was not considered in Salley, 925

A.2d at 121.  The issue was analyzed, in the context of an employment dispute, by the

Third Circuit Court of Appeals in Blair v. Scott Specialty Gases, 283 F.3d 595 (3d Cir.

2002):

> While this court must be mindful of the "liberal federal policy
> favoring arbitration agreements," Moses H. Cone Memorial
> Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct.
> 927, 74 L. Ed. 2d 765 (1983), the Supreme Court has also
> made clear that arbitration is only appropriate "so long as the
> prospective litigant effectively may vindicate [his or her]
> statutory cause of action in the arbitral forum" allowing the
> statute to serve its purposes.  Gilmer v. Interstate/Johnson
> Lane Corp., 500 U.S. 20, 28, 111 S. Ct. 1647, 114 L. Ed. 2d 26
> (1991) (alteration in original) (quoting Mitsubishi Motors
> Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637, 105
> S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).  Arbitration costs are
> directly related to a litigant's ability to pursue the claim.  In
> Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S.
> 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000), the Supreme
> Court acknowledged that "the existence of large arbitration
> costs could preclude a litigant . . . from effectively vindicating
> her federal statutory rights in the arbitral forum."  Id. at 90,
> 121 S. Ct. 513.

Id., at 605.  On remand in Blair v. Scott Specialty Gases, the district court directed the

employer to pay all arbitration costs.  See 2002 WL 1838486.

16

Later, in Parilla v. IAP Worldwide Services, VI, Inc., 368 F.3d 269, 284 (3d Cir. 2004), the Third Circuit reviewed its prior holdings on the possible unconscionability of a provision in an agreement concerning arbitration costs, and stated:

> Essentially, we have held that an arbitration provision that makes the arbitral forum prohibitively expensive for a weaker party is unconscionable. See Alexander, 341 F.3d at 269-70. With respect to an employee who is unable to pay the costs of arbitration, we see little difference between a 100% probability that the employee will have to pay half the arbitrator's fees and expenses on the one hand, and an indeterminate (but less than 100%) probability that the employee would have to pay all of the arbitrator's fees and expenses on the other. In either case, the employee must consider whether arbitration will be so prohibitively expensive for her that she cannot take advantage of the arbitral forum. Simply the prospect that the employee may have to pay the entire amount of the arbitrator's fees and expenses may serve to chill her willingness to bring a claim. Moreover, we see no reason to suspect that providing the arbitrator with some discretion to direct whether such fees will ultimately be incurred would have a determinative effect on the employee's calculus in deciding whether to seek arbitration. We therefore conclude that, as long as Parilla carries her burden to show an inability to pay the anticipated arbitral costs, the "loser pays" provision is just as unreasonably favorable to Appellants as would be a "fee splitting" provision. Accordingly, Parilla must be allowed limited discovery on remand in order to provide her with the means to show her inability to pay the anticipated costs of arbitration.

Id., at 284-85.

In both Blair and Parilla, the Court of Appeals placed the burden upon the party seeking to invalidate the arbitration agreement to demonstrate that it would be "prohibitively expensive" to pay the agreed upon arbitration costs, thereby nullifying that party's ability to seek redress of her claims. The plaintiff in this adversary proceeding attempts to meet his evidentiary burden by submitting an affidavit disclosing that his sole income is $650 per month in disability benefits, and attaching to his memorandum a copy

17

of a fee schedule from the National Arbitration Forum (one of the three acceptable dispute

resolution entities identified in the arbitration agreement).  He contends that the potential

fees chargeable to him, were he compelled to seek arbitration, could exceed $1,000.

Plaintiff's Memorandum Opposing Wells Fargo's Motion, at 22-23.  Such a large fee in

relation to his monthly income, he maintains, renders his claims against the defendants

effectively unenforceable.

  Delta, in its Supplemental Brief, at 3-4 n.3, argues that the cost provisions of

the arbitration agreement (quoted earlier) afford the arbitrator discretion not to assess fees

against the plaintiff/borrower, and that arbitration entities such as JAMS and the American

Arbitration Association (the other two specified entities) can make appropriate fee waivers

where a party is indigent.  Id.  This defendant also contends that the arbitration cost

provision in its agreement has been upheld by other courts.  See Anderson v. Delta

Funding Corp., 316 F. Supp. 2d at 567.

  The New Jersey Supreme Court took a different view of this very cost

provision, a view consistent with concerns articulated by the Court of Appeals in Blair, in

analyzing Delta's arbitration agreement.  The Court observed:

> It is well understood that fee-shifting provisions can deter a
> litigant from pursuing a claim. . . .  The prospect of having to
> shoulder all the costs of arbitration could chill Harris and
> similarly situated consumers from pursuing their statutory
> claims through mandatory arbitration.  Other courts that have
> analyzed the allocation of arbitration costs under federal law,
> have taken into consideration the possible "'chilling effect'"
> that certain cost provisions can have both on an individual
> claimant and on similarly situated litigants.  Morrison v.
> Circuit City Stores, Inc., 317 F.3d 646, 657-67 (6th Cir. 2003)
> (finding cost-splitting provision unenforceable) . . . .
>
> Although the public policy of our State would permit an
> arbitration agreement to shift costs and attorney's fees to a

18

consumer who brings "frivolous" or "bad faith" claims, see
N.J.S.A. 2A:15-59.1 (recognizing public policy against
frivolous and bad faith litigation and establishing penalties for
same), no such limitation is evident in the cost-shifting
provision applicable to Harris.  Delta claims that arbitrators
rarely, if ever, shift costs to a consumer.  However, contract
unconscionability must be decided based on the contract as
written because the language of the agreement is what
consumers must consider when assessing whether to pursue a
statutory-rights claim against Delta.  Delta drafted the
arbitration agreement giving the arbitrator unfettered discretion
to shift the entire cost of arbitration to Harris.  The agreement
as written, and as yet uninterpreted by an arbitrator, could
force Harris to bear the risk that she will be required to pay all
arbitration costs.  That risk is unconscionable in that it is a
deterrent to the vindication of her statutory rights.

The fact that, under the agreement's terms, Delta will consider,
in "good faith," advancing any costs to Harris does not alter
our analysis.  Even if Delta elected to advance the costs of the
arbitration to Harris, the advance is merely a loan.  Harris
ultimately could still be saddled with the entire cost of
arbitration.  That creates a substantial and unreasonable
deterrent to the vindication of the statutory rights of Harris and
others who are similarly situated.  A contract of adhesion that
contains such a term, which effectively would deter the
vindication of a consumer's statutory rights, would be
unconscionable and unenforceable if interpreted and applied in
the manner described above.

Delta Funding Corp. v. Harris, 189 N.J. at 42-44 (citations and footnotes omitted).

In bankruptcy cases, debtors who file adversary proceedings (such as this
one) are not assessed any filing fee.  Appendix to 28 U.S.C. § 1930, Bankruptcy Court
Miscellaneous Fee Schedule (6).  If the debtor here is compelled to commence an
arbitration action, he could conceivably be assessed considerable costs.  Given his modest
income, such a potential liability could deter such action.  And there is no dispute that the
this arbitration provision was in a form drafted by Delta for use in its loan agreements.

19

I further conclude that the debtor had "a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it," <u>Salley v. Option One Mortgage Corp.</u>, 925 A.2d at 119, in that it might insulate Delta and its assigns by deterring consumer protection law claims. Accordingly, Pennsylvania law of unconscionability would concur with the analysis quoted above by New Jersey Supreme Court that the fee allocation provision in the Delta arbitration agreement is unconscionable.

Although this aspect of the arbitration agreement is unenforceable under state law, the appropriate remedy, consistent with the arbitration agreement itself, is to sever the cost provision and thus direct that the defendants pay for their desired arbitration. <u>See</u> <u>Delta Funding Corp. v. Harris</u>, 189 N.J. at 46; <u>Spinetti v. Service Corp. International</u>, 324 F.3d 212 (3d Cir. 2003); <u>see</u> <u>also</u> Delta's Supplemental Brief, at 4 n.4 (acknowledging that severance of an unconscionable cost provision may be appropriate).

IV.

Finally, the debtor maintains that Counts II and III of this adversary proceeding constitute "excluded claims" within the meaning of the arbitration agreement, as they both purportedly are raised defensively in response to the secured proof of claim filed by Wells Fargo, and seek recoupment. This position overlooks that Delta has not filed any claim in this bankruptcy case and yet is named as a defendant from whom relief apparently is sought. Thus, as to Delta, the two consumer protection claims raised by the debtor could not be defensive.

20

Whether, as to Wells Fargo, the debtor's two claims are within the scope of the definition of excluded claims must be determined by the arbitrator.

To the extent the debtor's argument imputes significance to Wells Fargo's filing of a proof of claim, I note that numerous courts have concluded that a creditor who files a proof of claim does not, by that act alone, waive its contractual right to arbitrate a dispute. See, e.g., In re Kaiser Group Int'l, Inc., 307 B.R. 449, 454-55 (D. Del. 2004); In re Hart Ski Mfg. Co., 22 B.R. 763, 765 (D. Minn. 1982), aff'd, 711 F.2d 845 (8th Cir. 1983); In re Mor-Ben Ins. Markets Corp., 73 B.R. 644, 647 (B.A.P. 9th Cir. 1987) ("A claim may be filed to secure a creditor's right to partake in distribution of the debtor's estate without waiving his right to arbitration."); In re Transport Associates, Inc., 263 B.R. 531, 536 (Bankr. W.D. Ky. 2001) ("Bankruptcy courts uniformly hold that filing a proof of claim does not waive a party's right to invoke an arbitration provision."); see also In re Mintze, 434 F.3d at 225-26 (adversary proceeding commenced after defendant/creditor filed a proof of claim was arbitrable); In re Cooley (same).[5]  Thus, Wells Fargo has not waived any contractual arbitration rights simply by filing its claim in this chapter 13 case. Nor would an objection to the proof of claim be per se non-arbitrable.  See In re Transport Associates, Inc., 263 B.R. at 535.

---

[5]A party can waive the right to arbitrate a dispute "if the party '[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right.' . . .  A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner."  Lewallen v. Green Tree Servicing, L.L.C.,  487 F.3d 1085, 1090 (8th Cir. 2007) (citation and quoted reference omitted).  Here, the defendants in this proceeding have asserted their arbitration right promptly after the debtor's commencement of litigation and have not acted inconsistently with that contractual right.

21

Furthermore, the fact that the debtor's amended complaint labels the relief sought as "recoupment" does not necessarily imply that the two claims are merely defensive.  For example, under Pennsylvania law, Truth in Lending recoupment claims are considered impermissible counterclaims, rather than affirmative defenses, to foreclosure actions.  See Fleet Real Estate Funding Corp. v. Smith, 366 Pa. Super. 116, 126-27 (1987).  Thus, the debtor's classification of his desired relief in Counts II and III of this adversary proceeding is not dispositive of the issue.  Rather, the proper scope of the arbitration agreement is determined by the intention of the parties, which intention may be expressed by the language of the arbitration agreement itself.

Recently, in Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 2007 WL 1673876 (3d Cir. 2007), the Third Circuit Court of Appeals considered "the sometimes vexing issue of the respective roles of the court and the arbitrators" in determining whether a claim is within the scope of the arbitration agreement.  Id., at *4.  The appellate court analyzed two decisions issued by the Supreme Court, Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), and noted the following language of Green Tree :

> "In certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clea[r] and unmistakabl[e]' evidence to the contrary).  AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).  These limited instances typically involve matters of a kind that 'contracting parties would likely have expected a court' to decide.  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002).  They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy."

22

Id., at *6 (quoting Green Tree Financial Corp. v. Bazzle, 539 U.S. at 452).

      In other words, absent language or clear evidence to the contrary, a court will typically determine the scope of the arbitration agreement based upon the parties' presumed intent.  However, in considering this gateway issue, a court must "look to the Agreement to see if the parties affirmatively addressed the question of who decides arbitrability.  The presumption is that disputes about arbitrability are for the court to resolve unless there is clear and unmistakable evidence that the parties agreed to have the arbitrator determine arbitrability."  Sadler v. Green Tree Servicing, LLC, 466 F.3d 623, 625 (8th Cir. 2006).

      In support of his contention that Counts II and III are not arbitrable, the debtor emphasizes language in the arbitration agreement that "defenses asserted by [the borrower] constitute 'excluded claims.'"  He maintains that the parties intended that only claims giving rise to affirmative relief were included within the scope of the agreement, not recoupment claims giving rise only to an offset, and that any ambiguity in this provision must be construed against its drafter.  The defendants, though, counter that arbitrable claims under the arbitration agreement expressly include HOEPA and UDAP claims.

      I take no position on this issue.  The arbitration agreement specifically defines an arbitrable claim as any dispute "including the validity, enforceability or scope of this Agreement."  (Emphasis added.)  This language is sufficiently clear to meet the standard set forth in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995), requiring an arbitrator to determine if the relief sought by the debtor in Counts II and III are arbitrable.  See generally Quackenbush v. Allstate Ins. Co., 121 F.3d 1372,

1380 (9th Cir. 1997).  Therefore, whether Counts II and III are arbitrable must be resolved

by the arbitrator.


V.


In sum, I agree with the defendants that the debtor entered into an

enforceable arbitration agreement under Pennsylvania law, except for the provision

concerning arbitration costs.  The costs of arbitration shall be borne solely by the

defendants.  I further conclude that I have no discretion not to enforce the prepetition

arbitration agreement.  Finally, whether Counts II and III of the debtor's amended

complaint are outside the scope of arbitrable claims will be an issue for the arbitrator to

decide.  If the arbitrator decides that those claims are arbitrable, the arbitrator shall render

a decision concerning the rights of the parties under relevant law.  The arbitrator's

decision shall be reviewable in this court solely within the limited scope of the FAA.

Until that arbitration ruling is made, this court shall stay the disposition of

Counts II and III.

An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| KENNETH HERRINGTON | : | |
| Debtor | : | Bankruptcy No. 06-14433bif |
| _____ | | |
| KENNETH HERRINGTON | : | |
| Plaintiff | : | |
| v. | : | |
| WELLS FARGO BANK, MINNESOTA, N.A., DELTA FUNDING CORPORATION and COUNTRYWIDE HOME LOANS | : | Adversary No. 07-0009 |
| Defendants | : | |
| _____ | | |

..................................................

ORDER

..................................................

AND NOW, this 8th day of August 2007, for the reasons stated in the accompanying memorandum, it is hereby ordered that defendants' motions to compel arbitration are granted and this adversary proceeding is stayed as to Counts II and III only, pending resolution of those claims in arbitration or a determination by the arbitrator that the two claims are non-arbitrable.

It is further ordered that the plaintiff is directed to initiate arbitration proceedings within thirty (30) days from the date of this order in a manner consistent with the arbitration agreement.

And, it is further ordered that all costs of arbitration shall be the joint

responsibility of  defendants Delta and Wells Fargo.

_____

BRUCE FOX
United States Bankruptcy Judge

copies to:

Montgomery L. Wilson, Esq.
Community Legal Services
3638 N. Broad St.
Philadelphia, PA 19140

Martin C. Bryce, Jr., Esq.
Ballard Spahr Andrews & Ingersoll LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Dashika R. Wellington, Esq.
Pelino & Lentz, P.C.
One Liberty Place, 32nd Floor
1650 Market Street
Philadelphia, PA 19103